UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE POSEPHNY, et al., <br> Plaintiffs, <br> v. <br> AMN HEALTHCARE INC., et al., <br> Defendants. | Case No. 18-cv-06284-KAW <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br> Re: Dkt. No. 15 |

Plaintiffs filed the instant putative class action against Defendants, asserting various violations of California labor law. (Second Amended Compl. ("SAC") ¶¶ 8-14, Dkt. No. 1-1.) Pending before the Court is Defendants' motion to compel arbitration. (Defs.' Mot. to Compel, Dkt. No. 15.) Having considered the filings and the arguments made at the January 31, 2019 hearing, the Court GRANTS Defendants' motion to compel.

## I. BACKGROUND

Defendants are in the business of healthcare staffing, recruiting and hiring registered nurses to staff hospitals during labor disputes and strikes. (SAC ¶ 3; *see also* Larson Decl. ¶ 3, Dkt. No. 15-1.) Healthcare workers are directly employed by Defendant Healthsource Global Staffing, Inc. ("HSG"); Defendants assert that the remaining Defendants do not employ any healthcare workers. (Larson Decl. ¶ 2.)

To be eligible for employment by Defendant HSG, the applicant creates an account through Defendant HSG's website using a unique e-mail address and password. (Larson Decl. ¶ 4.) Defendant HSG maintains a database of all applicants who have created an account. (*Id.*) After creating an account, the applicant must "build a profile," providing information on his or her licenses, certifications, skills, experience, qualification, and availability. (Larson Decl. ¶ 6.) Whenever an applicant logs into his or her account, the applicant is presented with a "Main Menu"

screen that contains action items for the applicant to complete. (*Id.*)

Defendant HSG updates its database so that applicants can view potential strike assignments. (Larson Decl. ¶ 7.) An interested applicant can "nominate" himself or herself for consideration. After nominating himself or herself, the applicant will be prompted by the "Action Advisor" to complete his or her profile if the profile is not already complete. (Larson Decl. ¶ 8.) The action items include completing human resources forms, including an "Arbitration Agreement - Mandatory Forum Selection" ("Arbitration Agreement"). (*Id.*) Other forms include acknowledgment of receipt of Defendant HSG's policies and procedures and consent to conduct background checks and substance abuse tests. The Arbitration Agreement states in relevant part:

> The Parties mutually agree that any and all disputes arising out of, in connection with, or relating to your employment agreement with HealthSource, your employment with HealthSource, and any and all previous and future employment relationships with HealthSource, including with respect to the termination of such employment or other and any dispute as to the validity, interpretation, construction, application or enforcement of any provision of the operative employment agreement, shall be submitted to binding arbitration before a neutral arbitrator.

(*See* Larson Decl., Exh. A at 1.) The Arbitration Agreement states that an applicant has thirty days to revoke the agreement so that neither Defendant HSG nor the applicant would be bound by the terms of the agreement.[1] (*Id.* at 2-3.) The revocation could be e-mailed to "humanresroucesdepartment@healthsourceglobal.com" or mailed to a physical address. (*Id.* at 2.)

Completion of the Arbitration Agreement is not required for an applicant to be considered for an assignment. (Larson Decl. ¶ 9.) Instead, an applicant can complete the Arbitration Agreement and other human resources forms after being selected for an assignment and arriving at the assignment location. (Larson Decl. ¶¶ 10-11.) Upon arrival at the assignment location, the applicant completes the remainder of pre-employment paperwork, and interviews with clinical personnel to confirm qualifications. (Larson Decl. ¶ 11.) Defendant HSG then offers the applicant employment after completing all interviews and pre-hire paperwork. (*Id.*)

Plaintiff Nicole Posephny created her HSG account on June 16, 2016. (Larson Decl. ¶ 12.)

---

[1] Plaintiffs do not argue that the Arbitration Agreement is specific only to Defendant HSG, such that the other Defendants are unable to compel arbitration of the claims against them.

2

On April 29, 2018, Plaintiff Posephny nominated herself for assignment to an anticipated UC strike set for May 2018, and electronically signed the Arbitration Agreement. (SAC ¶ 4; Larson Decl. ¶ 12, Exh. A.) Plaintiff Posephny, however, states that she does not remember seeing or signing an arbitration agreement. (Posephny Decl. ¶¶ 6, 8, Dkt. No. 20-2.)

Plaintiff Baret Sloley-Sarchet created her HSG account at an unknown time. (Larson Decl. ¶ 13.) On September 30, 2016, Plaintiff Sloley-Sarchet nominated herself for assignment to a November 2016 strike. On November 18, 2016, Plaintiff Sloley-Sarchet electronically signed the Arbitration Agreement. (Larson Decl. ¶ 13, Exh. B.) Plaintiff Sloley-Sarchet also states that she does not recall seeing or signing an arbitration agreement. (Sloley-Sarchet Decl. ¶ 6, Dkt. No. 20-3.) On December 5, 2017, Plaintiff Sloley-Sarchet nominated herself for assignment to the UC strike. (Larson Decl. ¶ 13.)

Plaintiff LaQuita Knight created her HSG account on October 22, 2009. (Larson Decl. ¶ 14.) On November 16, 2016, Plaintiff Knight nominated herself for assignment to a November 2016 strike. On November 19, 2016, Plaintiff Knight electronically signed the Arbitration Agreement. (Larson Decl. ¶ 14, Exh. C.) Plaintiff Knight states that she does not remember seeing or signing an arbitration agreement. (Knight Decl. ¶ 6, Dkt. No. 20-4.) On December 5, 2017, Plaintiff Knight nominated herself for assignment to the UC strike. (Larson Decl. ¶ 14.)

Plaintiff Carmen Sistrunk created her HSG account on December 20, 2017. (Larson Decl. ¶ 15.) That same day, Plaintiff Sistrunk nominated herself for assignment to the UC strike. On January 22, 2018, Plaintiff Sistrunk electronically signed the Arbitration Agreement. (Larson Decl. ¶ 15, Exh. D.) Plaintiff Sistrunk states that she does not recall seeing or signing an arbitration agreement. (Sistrunk Decl. ¶ 6, Dkt. No. 20-5.)

Finally, Plaintiff Georgina Benson created her HSG account on December 12, 2015. (Lawson Decl. ¶ 16.) On November 17, 2016, Plaintiff Benson nominated herself for assignment to a November 2016 strike, and electronically signed the Arbitration Agreement. (Lawson Decl. ¶ 16, Exh. E.) Plaintiff Benson states that she does not remember seeing or signing an arbitration agreement. (Benson Decl. ¶ 6.) On December 5, 2017, Plaintiff Benson nominated herself for assignment to the UC strike. (Lawson Decl. ¶ 16.)

3

Plaintiffs were selected to work the UC Strike. (Posephny Decl. ¶¶ 8-9; Sloley-Sarchet Decl. ¶¶ 8-9; Knight Decl. ¶¶ 8-9; Sistrunk Decl. ¶¶ 8-9; Benson Decl. ¶¶ 8-9.) When Plaintiffs arrived at the strike location, Plaintiffs were required to sign a Temporary Employment Agreement ("TEA"). (Posephny Decl. ¶¶ 10-11; Sloley-Sarchet Decl. ¶¶ 10-11; Knight Decl. ¶¶ 10-11; Sistrunk Decl. ¶¶ 10-11; Benson Decl. ¶¶ 10-11.) The TEA stated in relevant part:

> 14. **Complete and Final Agreement**. Once signed by you, this Agreement will constitute the complete agreement between you and HealthSource regarding employment matters and will supersede all prior written or oral agreement or understandings on these matters. . . . This employment relationship may not be modified by any oral or implied Agreement. This Agreement may only be modified by a written agreement signed by you and an officer of HealthSource.

(Supp. Larson Decl., Exh. A at 4, Dkt. No. 21-2.)

On May 31, 2018, Plaintiffs state that they learned of the existence of the Arbitration Agreement, and that the Arbitration Agreement contained a 30-day revocation period. (Posephny Decl. ¶ 14; Sloley-Sarchet Decl. ¶ 14; Knight Decl. ¶ 14; Sistrunk Decl. ¶ 14; Benson Decl. ¶ 14.) Plaintiffs informed their attorney that they wished to revoke the agreement. (Posephny Decl. ¶ 15; Sloley-Sarchet Decl. ¶ 15; Knight Decl. ¶ 15; Sistrunk Decl. ¶ 15; Benson Decl. ¶ 15.) On June 1, 2018, Plaintiffs' counsel sent a revocation letter to Defendant HSG at "humanresroucesdepartment@healthsourceglobal.com," the e-mail address listed in the Arbitration Agreement. (Saunders Decl. ¶ 3, Exh. 1, Dkt. No. 20-1.) Because the e-mail address appeared to be misspelled, Plaintiffs' counsel also sent a revocation letter to "humanresourcesdepartment@healthsourceglobal.com," as well as sending a revocation letter to the physical address. The e-mail to "humanresroucesdepartment@healthsourceglobal.com" was returned as undeliverable. (Saunders Decl. ¶ 4, Exh. 2.)

Plaintiffs then filed the instant suit in state court, asserting violations of various California labor statutes. On October 12, 2018, Defendants removed the case. (Not. of Removal at 1, Dkt. No. 1.) On November 21, 2018, Defendants filed a motion to compel arbitration. On December 18, 2018, Plaintiffs filed their opposition. (Plfs.' Opp'n, Dkt. No. 20.) On January 8, 2019, Defendants filed their reply. (Defs.' Reply, Dkt. No. 21.)

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the Court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-281-JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## III. DISCUSSION

Plaintiffs do not challenge the terms of the Arbitration Agreement. Instead, Plaintiffs argue that there is no binding arbitration agreement because the Arbitration Agreement was superseded by the TEA. (Plfs.' Opp'n at 6-13.) Plaintiffs also contend that the Arbitration Agreements were extinguished by novation. (*Id.* at 9-10.) Alternatively, Plaintiffs assert that they revoked the Arbitration Agreement. (*Id.* at 13.)

### A. Integration

The primary dispute is whether the TEA is a fully integrated agreement, such that it cannot be supplemented by the Arbitration Agreement. In relevant part, California Code of Civil Procedure § 1856 states:

> (a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement.
>
> (b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

Thus, § 1856 "creates two levels of contract integration or finality: (1) the parties intended the writing to be the final expression of their agreement; and (2) the parties intended the writing to be the complete and exclusive statement of the terms of their agreement." *Kanno v. Marwit Capital Partners II, L.P.*, 18 Cal. App. 5th 987, 999 (2017). If a contract "falls within level 1 (the writing

is a final expression) then a prior or contemporaneous . . . agreement is admissible if it does not contradict the writing, and evidence of consistent additional terms may be used to explain or supplement the writing." *Id.* at 999-1000. If, however, a contract "falls within level 2 (complete and exclusive statement) then evidence of consistent additional terms may not be used to explain or supplement the writing." *Id.* at 1000.

In determining whether a contract is a complete and exclusive statement, the crucial inquiry "is whether the parties intended their writing to serve as the exclusive embodiment of their agreement." *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968). Even if the subject contract has an integration clause, "[t]he integration clause is a factor, and persuasive, but it is not controlling." *Kanno*, 18 Cal. App. 5th at 1007. While "[t]he instrument itself may help to resolve that issue," the "collateral agreement itself must be examined . . . to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing. Circumstances at the time of the writing may also aid in the determination of such integration." *Masterson*, 68 Cal. 2d at 225-26.

California courts have imposed two requirements in considering collateral agreements. First, the collateral agreement cannot "directly contradict the writing." *Masterson*, 68 Cal. 2d at 227; *see also Kanno*, 18 Cal. App. 5th at 1001 ("in determining the issue of integration, the collateral agreement will be examined only insofar as it does not directly contradict an express term of the written agreement"). Second, the court considers the collateral agreement if it "is such an agreement as might *naturally* be made as to a separate agreement by parties situated as were the parties to the written contract." *Masterson*, 68 Cal. 2d at 227-28 (internal quotation omitted). Alternatively, "[i]f the additional terms are such that, if agreed upon, they would *certainly* have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact." *Id.* (internal quotation omitted); *see also Kanno*, 18 Cal. App. 5th at 1001 ("the collateral agreement must be one which might naturally be made as a separate contract, i.e., if in fact agreed upon need not certainly have appeared in writing.").

In *Kanno*, the California Court of Appeal found that a "Contribution and Purchase Agreement" was not a complete and exclusive integration. 18 Cal. App. 5th at 1007-11. The

6

1 court acknowledged that the Contribution and Purchase Agreement appeared to be a final
2 expression, as it was "lengthy, formal, detailed, signed by all of the parties, and ha[d] an
3 integration clause" that stated that the agreement "contains the entire agreement between the
4 parties hereto with respect to the transactions contemplated by this Agreement and supersedes all
5 prior agreements or understanding with respect thereto." *Id.* at 1007. The court, however, found
6 that the parties intended an oral Stock Redemption Agreement to be part of their agreement,
7 looking at the circumstances of the agreement in which the parties repeatedly affirmed the terms
8 of the oral agreement. *Id.* at 1008-09. Additionally, the oral agreement concerned a matter that
9 "naturally would be a separate agreement and would not have been included in the writing," and
10 did not contradict any of the terms of the agreement. *Id.* at 1009-10. Accordingly, the Court of
11 Appeal concluded that the Contribution and Purchase Agreement was not intended as a complete
12 and exclusive statement, such that the oral Stock Redemption Agreement was admissible to
13 supplement the Contribution and Purchase Agreement with additional terms. *Id.* at 1010-11.

14 Here, as in *Kanno*, the TEA includes an integration clause which appears to state that the
15 TEA is a complete and exclusive statement.[2] Per *Masterson* and *Kanno*, however, that is not the
16 end of the Court's inquiry. First, the Court must consider the circumstances of the agreement,
17 including whether the Arbitration Agreement would naturally be a separate agreement that would
18 not be included in the writing. *See Masterson*, 68 Cal. 2d at 227-28; *Kanno*, 18 Cal. App. 5th at

---

[2] Defendants challenge whether the TEA's integration clause intended the TEA to be an exclusive embodiment of the agreement. (Defs.' Reply at 5-6.) Specifically, Defendants argue that the integration clause states that it is only a complete agreement "regarding employment matters," and that "employment matters" would not include a separate dispute resolution policy. (*Id.* at 6.) Defendants, however, cite no authority that dispute resolution of claims related to an employment relationship is not an employment matter. Indeed, in *Grey v. American Management Services*, the integration clause stated that the agreement was "the entire agreement between the parties in connection with Employee's employment," which the Court of Appeal found to include dispute resolution. 204 Cal. App. 4th 803, 807-08 (2012).

At the hearing, Plaintiffs focused on the integration clause, distinguishing the instant case from *Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625 (1997) and *Reynoso v. Bayside Management Co., LLC*, Case No. 13-cv-4091-YGR, 2013 WL 6173765 (N.D. Cal. Nov. 25, 2013). The Court agrees that these cases are distinguishable because their integration clauses were far narrower than that in the instant case and *Grey*. As made clear in *Masterson*, however, the inquiry does not end with the integration clause, as the Court must consider circumstances outside of the written contract, including the collateral agreements themselves. *See* 68 Cal. 2d at 225-26.

1009. The Court finds that it is. When creating a profile, applicants are asked to fill out paperwork, including the Arbitration Agreement, human resources forms, acknowledgments confirming receipt of Defendant HSG's policies and procedures, and consent for HSG to conduct background checks. (Larson Decl. ¶ 8.) The Arbitration Agreement itself contemplates a separate employment agreement between the applicant and Defendant HSG. (*See* Larson Decl., Exh. A at 1 (requiring arbitration of disputes "related to your employment agreement with HealthSource" and as to any terms "of the operative employment agreement").) Further, the TEA -- which by its name is a *temporary* employment agreement -- is not signed until the applicant is selected to work on the strike assignment and the applicant has arrived at the site. (*See* Posephny Decl. ¶¶ 8-10.) Under those circumstances, it appears that the parties agree to general terms that apply to any employment relationship between the applicant and Defendant HSG, as well as terms specific to the applicant's employment for the strike assignment as delineated in the TEA. Thus, the Arbitration Agreement -- which would cover all future separate employment agreements -- would naturally be a separate agreement from the TEA.

Second, the Court considers whether the Arbitration Agreement's terms contradict the TEA. *See Masterson*, 68 Cal. 2d at 227; *Kanno*, 18 Cal. App. 5th at 1009-10. Here, the TEA is silent as to dispute resolution; thus, the Arbitration Agreement's requirement that the parties arbitrate all disputes is not contradictory to the TEA.

Because the Arbitration Agreement is naturally a separate agreement from the TEA, and there are no terms that conflict, the Court finds the instant case comparable to *Kanno*, and concludes that the TEA is not a complete and exclusive statement of the agreement that supersedes the Arbitration Agreement. Thus, per Code of Civil Procedure § 1856(b), the terms of the TEA may be supplemented by the Arbitration Agreement, which requires the arbitration of all disputes relating to the employment agreement.

In so concluding, the Court finds Plaintiffs' reliance on *Grey v. American Management Services* distinguishable. There, the plaintiff was required to sign an "Issue Resolution Agreement" ("IRA") when applying for a position with the defendant. *Grey*, 204 Cal. App. 4th 803, 805 (2012). The IRA required that the plaintiff arbitrate any claim relating to his

8

employment. After the plaintiff accepted employment with the defendant, he was required to sign an employment contract that only required the arbitration of disputes arising from a breach of the employment contract. *Id.* The employment contract also provided that the agreement was "the entire agreement between the parties in connection with Employee's employment with [the defendant], and supersedes all prior and contemporaneous discussions and understandings." *Id.* The Court of Appeal found that the employment contract superseded the IRA, explaining that the integration clause specifically stated that it was the entire agreement. *Id.* at 807. Thus, "[b]ecause the contract says it is the entire agreement, common sense dictates that it supersedes other prior agreements related to [the plaintiff's] employment." *Id.*

Notably, the *Grey* court did not comply with *Masterson* and consider whether the IRA was naturally a separate agreement or if its terms contradicted the employment contract, instead ending its inquiry with the integration clause. *Cf. Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 270-71 (1987) ("Our Supreme Court held in *Masterson* . . . that such a clause, while it certainly helps to resolve the issue, does not of itself establish an integration; the collateral agreement itself must be examined in order to determine whether the parties intended it to be a part of their bargain."); *Brawthen v. H & R Block, Inc.*, 28 Cal. App. 3d 131, 137 (1972) ("[T]he determination may not be made from the writing alone; the proffered collateral parol agreement itself must be considered, as well as the circumstance surrounding the transaction, and its subject matter, nature and object."). By focusing on *Grey* and the integration clause only at the hearing, Plaintiffs did not consider the full analysis required by *Masterson*. Furthermore, the Court finds that *Grey* is distinguishable from the instant case because there, the IRA contradicted the employment contract, as the IRA had a broader scope of arbitrable claims than the employment contract. *See Grey*, 204 Cal. App. 5th at 805. Because the IRA contradicted the employment contract, the IRA would not have been admissible to show that the employment contract was a complete and exclusive statement, or to supplement the terms of the employment contract. Such is not the case here, where, as Plaintiff acknowledged at the hearing, the TEA is silent as to dispute resolution entirely, thus having no terms to be contradicted by the Arbitration Agreement. Further, as discussed above, this is a case where the Arbitration Agreement is naturally separate

9

from the TEA, as the TEA is designed to cover the terms of the specific strike assignments while the Arbitration Agreement and other human resources forms covers the employment relationship generally.

Accordingly, the Court concludes that the TEA is not a complete and exclusive statement of the agreement between Plaintiffs and Defendants, and that the Arbitration Agreement survives. Because there is an agreement to arbitrate between the parties, the Court must compel Plaintiffs' claims to arbitration.

### B. Novation

Next, Plaintiffs argue that the Arbitration Agreements "were completely extinguished by novation when [Defendants] and Plaintiffs signed the integrated TEAs." (Plfs.' Opp'n at 9.) "A novation is the substitution of a new obligation for an existing obligation. It involves . . . the substitution of a new obligation between the same parties with the intent to extinguish the old obligation . . . ." *Paykar Constr. v. Spilat Constr. Corp.*, 92 Cal. App. 4th 488, 494 (2001).

Plaintiffs make two arguments for novation. First, Plaintiffs contend that the TEA was integrated. (Plfs.' Opp'n at 9.) As discussed above, the Court finds that the TEA was not a complete and exclusive statement of the agreement. Second, Plaintiffs argue that the TEAs do not incorporate the Arbitration Agreement by reference. (*Id.* at 10.) Plaintiffs cite no authority that novation exists every time one agreement does not incorporate another by reference; rather, this argument likewise appears to be premised on the TEA being fully integrated. (*See id.* at 9.)

The Court finds novation does not apply. Again, novation requires "the substitution of a new obligation between the same parties with the intent to extinguish the old obligation," but Plaintiffs do not identify what new obligation has been substituted in place of the obligation to arbitrate. *See Paykar Constr.*, 92 Cal. App. 4th at 494; *Molera v. Cooper*, 173 Cal. 259, 262 (1916) ("It was ineffectual as a novation . . . because no new obligation was created").

### C. Revocation

Alternatively, Plaintiffs argue that they revoked the arbitration agreements as soon as they became aware of their existence. (Plfs.' Opp'n at 13.) In other words, Plaintiffs argue that because they were not aware of the arbitration agreements when they were signed, Plaintiffs are not bound

10

by their terms until they learned of their terms. The Court disagrees. California law is clear that "[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001); *see also Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("Valencia was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to Sanchez's attention. Any state law imposing such an obligation would be preempted by the FAA.").

Plaintiffs' reliance on *Segouros v. TransUnion Corp.* is unpersuasive. (Plfs.' Opp'n at 13.) There, the defendant's website had a service agreement that contained an arbitration agreement; the service agreement was located in a scroll window that did not have to be clicked on, and the website did not state that the purchase of the defendant's product was subject to the service agreement. *Segouros*, 817 F.3d 1029, 1031-33, 1035 (7th Cir. 2016). Applying Illinois law, the Seventh Circuit found that a consumer did not assent because the defendant did not inform the site users that purchasing a product meant they were agreeing to the service agreement. *Id.* at 1036. Here, in contrast, the arbitration agreement is a standalone document that was electronically signed by Plaintiffs, as required by an "Action Advisor" prior to being employed. (*See* Larson Decl. ¶¶ 8-9, 11, Exhs. A-F.) Thus, this is not a case where Plaintiffs were not informed that employment was premised on the signing of the arbitration agreement.

Plaintiffs also contend that the Arbitration Agreement's opt-out provision is misleading because the opt-out e-mail address is incorrect. (Plfs.' Opp'n at 13 n.1.) While troubling, Plaintiffs do not dispute that they did not attempt to opt-out until after the opt-out period expired. Thus, regardless of whether the opt-out address was correct, Plaintiffs' opt-out was untimely.

The Court concludes that Plaintiffs did not revoke the Arbitration Agreement, and are bound by its terms.

///

///

///

///

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to compel arbitration because Plaintiffs are bound by the Arbitration Agreement. The Court shall stay the proceedings in the instant case pending resolution of the arbitration. 9 U.S.C. § 3.

IT IS SO ORDERED.

Dated: February 5, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge