UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE POSEPHNY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>AMN HEALTHCARE INC., et al.,<br><br>　　　　Defendants. | Case No. 18-cv-06284-KAW<br><br>**ORDER GRANTING MOTION TO APPROVE SETTLEMENT**<br><br>Re: Dkt. No. 26 |

　　　　Plaintiffs filed the instant putative class action against Defendants, asserting violations of various California labor law. (Second Amended Compl. ("SAC") ¶¶ 8-14, Dkt. No. 1-2.) Plaintiffs also sought penalties under the California Private Attorneys General Act ("PAGA"). (SAC ¶ 15.)

　　　　Pending before the Court is Plaintiff's motion to approve a settlement pursuant to PAGA. (Pls.' Mot. to Approve, Dkt. No. 26.) Pursuant to Civil Local Rule 7-1(b) and General Order 72-3, the Court deems the matter suitable for disposition without a hearing. Having considered the filings and the relevant legal authority, the Court GRANTS Plaintiff's motion to approve the settlement.

## I. BACKGROUND

　　　　Defendants recruit and hire registered nurses to staff hospitals during labor disputes and strikes. (SAC ¶ 3.) From May 7 to May 9, 2018, over 50,000 University of California workers commenced a strike. (SAC ¶ 4.) Defendants hired Plaintiffs and approximately 2,440 individuals to fill in for striking workers. (SAC ¶ 5; Pl.'s Mot. to Approve at 3.)

　　　　Plaintiffs allege that Defendants' practices violated various California Labor Code provisions. For example, Plaintiffs assert that starting on May 4, 2018, workers were required to

arrive in California and stay at designated hotels, where they would wait for work assignments and complete paperwork. (SAC ¶¶ 6, 7, 37.) Defendants, however, failed to pay workers for time spent waiting for assignments and processing paperwork, as well as time spent waiting to be transported between their designated hotel and worksites. (SAC ¶¶ 38-41.) Plaintiffs also allege that despite regularly working in excess of eight to twelve hours per workday, they were not paid overtime or provided meal breaks and rest periods. (SAC ¶¶ 42-45.) Plaintiffs further allege that Defendants required workers to use their personal cell phones, but did not reimburse them for such use. (SAC ¶ 47.) Finally, Plaintiffs assert that Defendants failed to pay workers all wages earned or provide accurate itemized wage statements. (SAC ¶¶ 48-49.)

On May 15, 2018, Plaintiffs filed the instant action in state court. On June 27, 2018, Plaintiffs provided the Labor and Workforce Development Agency ("LWDA") with written notice of the PAGA claims. (Pyle Decl., Exh. B, Dkt. No. 26-1.) On October 12, 2018, Defendants removed the case. (Not. Of Removal at 1, Dkt. No. 1.) On November 21, 2018, Defendants filed a motion to compel arbitration. (Dkt. No. 15.) On February 5, 2019, the Court granted the motion to compel arbitration. (Dkt. No. 25.) On March 4, 2019, individual Plaintiffs filed demands for arbitration. (Pyle Decl. ¶ 34.) On December 23, 2019, the parties commenced settlement negotiations regarding Plaintiff's PAGA claims. (Pyle Decl. ¶ 34.)

In May 2020, the parties entered into the Settlement Agreement to resolve the PAGA claims. (Pyle Decl. ¶ 35.) The Settlement Agreement is based on approximately 2,440 PAGA members, who each worked a single pay period between May 1 and 9, 2018 (the "PAGA Period"). (*See* Pyle Decl., Exh. A ("Settlement Agreement") at 2.) The Settlement Agreement would release Defendants from all PAGA claims related to unpaid wages during the PAGA period in exchange for a Gross Settlement Amount of $244,000. (*Id.* at 4-5.) From the Gross Settlement Amount, Plaintiffs' counsel may seek: (1) third-party settlement administration fees up to $12,700, (2) attorney's fees of 33% ($80,520.00), and (3) costs up to $7,000. (*Id.* at 5.) The remaining funds will be designated as PAGA penalties and allocated between the LWDA (75%) and PAGA members (25%). (*Id.*)

On May 14, 2020, Plaintiffs filed the instant motion for approval of the PAGA settlement.

2

On May 29, 2020, the Court requested supplemental briefing. (Dkt. No. 27.) On June 4, 2020, Plaintiffs filed their supplemental brief. (Pl.'s Supp. Brief, Dkt. No. 28.)

## II. LEGAL STANDARD

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). "Because a PAGA action is brought as a proxy for law enforcement agencies, there is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23." *Delgado v. Marketsource, Inc.*, Case No. 17-cv-7370-LHK, 2019 U.S. Dist. LEXIS 146968, at *8 (N.D. Cal. Aug. 28, 2019) (internal quotation omitted). PAGA, however, requires that the court "review and approve any settlement of any civil action filed pursuant to [PAGA]." Cal. Labor Code § 2699(l)(2). Additionally, "[a] party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the LWDA to allow the LWDA to comment on the settlement if the LWDA so desires." *Delgado*, 2019 U.S. Dist. LEXIS 146968, at *8-9.

In evaluating a PAGA settlement, "neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the LWDA has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotations omitted). In *O'Connor v. Uber Techs., Inc.*, the LWDA offered the following guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). "In line with these general principles, a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Haralson*, 383 F. Supp. 3d at 972.

3

### III. DISCUSSION

#### A. Fairness of the Proposed Settlement

"Given the lack of an express standard, several courts . . . have applied several of the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate a PAGA settlement. *Delgado*, 2019 U.S. Dist. LEXIS 146968; *see also Patel v. Nike Retail Servs.*, Case No. 14-cv-4781-RS, 2019 U.S. Dist. LEXIS 77988, at *5 (N.D. Cal. May 8, 2019), *O'Connor*, 201 F. Supp. 3d at 1134. The relevant *Hanlon* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the presence of government participation; and (6) the expertise and views of counsel." *Patel*, 2019 U.S. Dist. LEXIS 77988, at *6.

##### i. Strength of Plaintiff's Case

"In general, legal uncertainty favors approval of a settlement." *Patel*, 2019 U.S. Dist. LEXIS 77988, at *7. Here, Plaintiffs faced several uncertainties as to the merits of their case. For example, Plaintiffs allege that Defendants required workers to reside at specific hotels, take Defendants' transportation to and from worksites, and constantly monitor their personal cell phones for instructions and assignments throughout the day. (*See* SAC ¶¶ 38-41, 47.) Witnesses, however, provided conflicting testimony. (Pl.'s Mot. for Approval at 11.) While some witnesses agreed with Plaintiffs, others believed they were free to leave their hotel, take alternative forms of transportation, and not use their personal cell phones. (*Id.* at 11-12.) Thus, there is a factual dispute as to "whether Defendants' actions reached a sufficient level of control so as to result in compensable time." (*Id.* at 12.) Additionally, there may be an issue of whether workers were underpaid as Defendants paid workers a guaranteed number of hours regardless of whether they actually worked. (*Id.*)

Plaintiffs also face the possibility that the scope of their case would be limited. Specifically, the operative complaint focuses on the job categories of certified nursing assistants, certified medical assistants, and registered nurses. (Pl.'s Mot. for Approval at 12.) Thus, Defendants may have sought to limit the case to those specific job categories, rather than all

4

workers employed by Defendants during the PAGA period. (*Id.*) Defendants could also have argued that the PAGA claim was unmanageable. (*Id.*)

Additionally, even if Plaintiffs prevailed, Plaintiffs would not necessarily recover all of the civil penalties sought. The court can reduce the penalty when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *see also Patel*, 2019 U.S. Dist. LEXIS 77988, at *8. Plaintiffs point to a number of cases where courts have reduced PAGA penalties pursuant to this section. (Pl.'s Mot. to Approve at 12.)

Given the uncertainties of recovery and the possibility that the civil penalties sought would be reduced, the Court finds this factor favors approving the settlement.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In addition to the risks identified above, Plaintiffs faced considerable expenses should litigation proceed. For example, the parties would have had to conduct multiple depositions of party and percipient witnesses. (Pl.'s Mot. to Approve at 14.) Plaintiffs also point to the inherent risks of complex PAGA actions and the likelihood of appeals. (*Id.*) The Court finds that this factor also favors approving the settlement.

### iii. The Amount Offered in Settlement

Here, the Gross Settlement Amount is $244,000. PAGA permits an aggrieved employee to recover a civil penalty of $100 per pay period for an initial violation. Cal. Lab. Code § 2699(f)(2). Here, there are approximately 2,440 employees, who each worked a single pay period. (Pl.'s Mot. to Approve at 14.)

In their motion, Plaintiffs asserted that "[t]he maximum amount of civil penalties available for recovery under PAGA for the asserted violations, assuming no 'stacking,' is estimated to be $244,000," *i.e.*, $100 for each of the 2,440 employees. (Pls.' Mot. to Approve at 11.) In its order requiring supplemental briefing, the Court observed that many district courts permit stacking. (*See* Dkt. No. 27 at 1-2.) The Court thus required Plaintiff to provide supplemental briefing as to what the maximum penalties would be if there was stacking. (*Id.* at 2.)

In their supplemental brief, Plaintiffs estimated that the maximum amount of civil penalties if there was stacking is $1,464,000. (Pls.' Supp. Brief at 4-5.) The Gross Settlement Amount of

1  $244,000 is 16.67% of that amount. (*Id.* at 5.)

2  The Court finds this factor favors approving the settlement. The settlement is equal to 100% of the maximum PAGA penalties if stacking is not permitted, and 16.67% if stacking is permitted. As Plaintiffs correctly point out, however, there is legal uncertainty as to whether stacking is permitted. *See Smith v. Lux Retail N. Am., Inc.*, Case No. 13-cv-1579-WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013) (raising doubts "that we would really pile one penalty on another for a single substantive wrong"). Moreover, even if stacking was permitted, the Court could still reduce the penalties awarded per § 2699(e)(2), particularly if the penalties were significantly greater than Plaintiffs' actual damages. Additionally, the discount acknowledges the legal uncertainties identified above.

### iv. The Extent of Discovery Completed

The settlement negotiation was made after the parties engaged in significant investigation, informal discovery, and legal research. (Pyle Decl. ¶ 11.) Plaintiffs' counsel states that they began investigating this action shortly after March 9, 2018, and their investigation included interviewing numerous witnesses, gathering and reviewing documentary evidence, and legal research. (Pyle Decl. ¶ 28.) After the Court granted Defendants' motion to compel arbitration, the parties also conducted individual arbitrations in 2019. (Pyle Decl. ¶ 34.) Thus, the parties have a well-developed sense of the risks of continued litigation. Accordingly, the Court finds that this factor favors approving the settlement.

### v. Presence of Government Participation

As required by statute, Plaintiffs submitted the settlement to the LWDA on May 19, 2020. (Supp. Pyle Decl., Exh. A, Dkt. No. 28-1.) In Plaintiffs' supplemental brief, Plaintiffs stated that the LWDA had not responded. (Pls.' Supp. Brief at 7.) As of the date of this order, the LWDA has still not responded. The Court finds that this factor favors approval, as the LWDA has been given an opportunity to comment on the settlement but has not raised any objections.

### vi. Expertise and Views of Counsel

Here, Plaintiffs are represented by competent and experienced counsel, with decades of experience in class action and employment litigation. (Pyle Decl. ¶¶ 5-15.) Based on this

experience, Plaintiffs' counsel believes that the settlement "achieves an excellent result for the PAGA Members and the State of California." (Pyle Decl. ¶ 63.) The Court concludes that this factor favors approval.

### vii. Conclusion

Having considered the relevant *Hanlon* factors, the Court finds that the settlement of the PAGA claim is fair and reasonable and promotes the goals of PAGA. Therefore, the Court GRANTS Plaintiffs' motion for approval of the settlement of the PAGA claims.

### B. Attorney's Fees and Costs

Per PAGA, "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). "PAGA does not provide a specific standard for evaluating attorney's fees in connection with a PAGA settlement. However, the lodestar method is a well-established method for determining the reasonableness of an attorney's fee award." *Delgado*, 2019 U.S. Dist. LEXIS 146968, at *16. Other courts have applied the "percentage method." *See Abelar v. Am. Residential Servs., L.L.C.*, ED CV19-726-JAK (JPRx), 2019 U.S. Dist. LEXIS 198772, at *13 (C.D. Cal. Nov. 14, 2019).

Here, Plaintiffs' counsel seeks one-third of the Gross Settlement Amount for attorney's fees, or $80,520.00. The Ninth Circuit typically applies a "benchmark award" of 25%, but "many awards that deviate from the benchmark are approved." *Abelar*, 2019 U.S. Dist. LEXIS 198772, at *14; *see also id.* at *14-15 (awarding attorney's fee ward of one-third of the gross settlement amount). Additionally, Plaintiffs' counsel has provided their timesheets, which shows that counsel has incurred $140,303.00 in attorney's fees. (*See* Pyle Decl. ¶ 74, Exh. F.) Thus, Plaintiffs' counsel seeks an award that is 57% of their lodestar.[1] Based on the Court's review of the tasks performed and the hours spent on each of them, the Court finds that the lodestar is reasonable. Accordingly, the attorney's fee request of $80,520.00 is approved.

---

[1] Plaintiffs' counsel states that it will also be receiving $35,333.33 in attorney's fees from settlements in Plaintiffs' individual cases. (Pyle Decl. ¶ 77.) The combined total of attorney's fees from the individual settlements and the PAGA settlement is less than the total lodestar.

7

Plaintiffs' counsel also seeks costs of $6,265.87.[2] (Pls.' Supp. Brief at 7.) The costs sought include filing costs, mediation, research, printing, investigation costs, and travel expenses. (Pyle Decl., Exh. E.) The costs are reasonable and necessary. Accordingly, the costs request of $6,265.87 is approved.

### C. Administration Costs

Finally, the Settlement Agreement provides for administration costs not to exceed $12,700. Plaintiffs propose using Simpluris as the settlement administrator. (Pls.' Mot. to Approve at 23.) Simpluris will be responsible for mailing settlement notices and distributing the settlement funds, as well as performing the necessary "skip traces" if notices and checks are returned as undeliverable. (*Id.*) Plaintiffs have provided a proposal by Simpluris for $14,609.38. (Pyle Decl., Exh. D.) The Court finds the proposal reasonable. As provided in the Settlement Agreement, however, the Court approves administrative costs up to $12,700 only. (Settlement Agreement at 5.)

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion to approve the PAGA settlement. The Court also approves attorney's fees of $80,520, costs of $6,265.87, and administration costs not to exceed $12,700.

IT IS SO ORDERED.

Dated: July 9, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] The Court previously requested Plaintiffs' counsel to explain charges sought in the San Diego and Los Angeles Superior Courts. (Dkt. No. 27 at 3.) In their supplemental brief, Plaintiffs' counsel explained that these charges were part of Plaintiffs' investigation costs from downloading class action complaints filed in these courts. (Pls.' Supp. Brief at 6.) Plaintiffs, however, also noted that they had inadvertently listed one of the charges twice, and thus revised their cost request accordingly. (*Id.* at 6-7.)